AO 106 (Rev 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)



# UNITED STATES DISTRICT COURT

### for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One rose-gold colored iPhone cellular telephone recovered<br>from the person of MATTHEW STEPHENS | )<br>)<br>)<br>)<br>)<br>) |

Case No.  19 - 691 - 1 - M

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*

See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |
| 18 U.S.C. §§922(g) | Firearms Trafficking |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Shawn Reznik (ATF)

*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 23, 2019

*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Marilyn Heffley, U.S. Magistrate Judge

*Printed name and title*

AO 106 (Rev 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the
Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One black LG cellular telephone recovered from the person<br>of MATTHEW STEPHENS | )<br>)<br>)<br>)<br>)<br>)    Case No.   19-691-2-m |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*

  See Attachment A.

located in the    Eastern    District of    Pennsylvania    , there is now concealed *(identify the person or describe the property to be seized)*:

  See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

  ☑ evidence of a crime;

  ☑ contraband, fruits of crime, or other items illegally possessed;

  ☑ property designed for use, intended for use, or used in committing a crime;

  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |
| 18 U.S.C. §§922(g) | Firearms Trafficking |

The application is based on these facts:

  ☐ Continued on the attached sheet.

  ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested
    under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Shawn Reznik (ATF)
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    April 23, 2019

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Marilyn Heffley, U S. Magistrate Judge
*Printed name and title*



# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

One rose-gold colored Apple Watch recovered from the person of MATTHEW STEPHENS

Case No. 19- 691 -3 - m

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*

See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |
| 18 U.S.C. §§922(g) | Firearms Trafficking |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Shawn Reznik (ATF)

*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 23, 2019

*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Marilyn Heffley, U.S. Magistrate Judge

*Printed name and title*

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| One ZTE cellular telephone recovered from 2332 North Howard Street, Philadelphia, PA | ) Case No. 19-691-4-m |
| | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*
  See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:
  See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |
| 18 U.S.C. §§922(g) | Firearms Trafficking |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Shawn Reznik (ATF)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ April 23, 2019 _____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Marilyn Heffley, U.S. Magistrate Judge
*Printed name and title*

19-691-ALL

## AFFIDAVIT

1.      I, Shawn Reznik, am a Special Agent with the United States Department of

Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so

employed since May 2015.  I am a graduate of the Criminal Investigator Training Program and

the Special Agent Basic Training Program at the Federal Law Enforcement Training Center in

Glynco, Georgia.  I am currently assigned to a specialized enforcement group, the Philadelphia

ATF Violent Crimes Task Force, whose primary mission is to investigate those individuals and

groups that violate the federal firearms and narcotics statutes.  During my tenure as an agent, I

have participated in and personally conducted investigations involving violations of these laws

and have been the affiant in the execution of several search warrants.

2.      The information contained in this affidavit is based upon my personal observations

and investigation, information relayed to me by other special agents and/or other law enforcement

agents, as well as official reports of law enforcement.  Because this affidavit is being submitted

for the limited purpose of securing authorization to search one cellular telephones, I have not

included every fact known to me concerning this investigation.  I have set forth only the facts that

I believe are necessary to establish probable cause to seize and search the cellular telephones and

an Apple Watch recovered from the defendant Matthew STEPHENS, which were recovered either

incident to his arrest or from a search warrant executed on STEPHENS' residence on March 27,

2019:

     i.    Recovered from STEPHENS' person on the corner of Hellerman Street and Bustleton Avenue in Philadelphia, PA on March 27, 2019, at the time of his arrest: One rose gold colored iPhone cellular telephone.

    ii.    Recovered from STEPHENS' person on the corner of Hellerman Street and Bustleton Avenue in Philadelphia, PA on March 27, 2019, at the time of his arrest: One black LG cellular telephone, IMEI:356694090082637.

        iii.     Recovered from STEPHENS' person on the corner of Hellerman Street and Bustleton Avenue in Philadelphia, PA on March 27, 2019, at the time of his arrest: One rose gold colored Apple Watch.

        iv.     Recovered during a search warrant execution at STEPHENS' house located at 2332 North Howard Street in Philadelphia, PA on March 27, 2019: One ZTE cellular telephone, IMEI: 865994033817196.

3.      This affidavit requests the search of the property listed in Attachment A and the extraction from that property of electronically stored information as described in Attachment B.

## PROBABLE CAUSE

4.      In or about December 2017, members of ATF initiated an investigation into STEPHENS, Angel Quinones (QUINONES), Rosalie Olmedo a/k/a "Rosie" (OLMEDO), Jose Rivera a/k/a "Bullet" (RIVERA), Elvin Toro (TORO), Alfonso Gallimore (GALLIMORE), and Kevin Bailey a/k/a "Zimmy" (BAILEY) for the illegal distribution of narcotics, methamphetamine, and firearms in or around an area known as the West Kensington section of Philadelphia, and elsewhere.

5.      The investigation was/is predicated primarily on information provided a confidential informant/source ("CS-1"), as well as physical surveillance to include ground and aerial, the use of remote video recording devices referred to as "pole cameras," controlled drug and firearm purchases and related meetings between the targets and the informants, and local law enforcement intelligence. CS-1 is a paid, registered ATF informants.

6.      CS-1 has cooperated with investigators in the past and has provided reliable and accurate information, which has led to multiple successful federal investigations.[1] CS-1 has, in the past, made statements against his/her own penal interest. The information provided by CS-1

---

[1] CS-1 cooperated with ATF regarding United States vs. Raul PEREZ, et al., charging two defendants in a 34-count indictment with 18 USC 371, 18 USC 922(a)(1)(A), 21 USC 846, 21 USC 841(a)(1), 21 USC 841(a)(1), (b)(1)(B), 21 USC 841(a)(1),(b)(1)(C), 18 USC 922(g), 18 USC 2. The indictment was filed December 19, 2018.

in connection with the current investigation has been corroborated by law enforcement surveillance, local PPD police reports, Pennsylvania Department of Motor Vehicle records, law enforcement databases, telephone records, and information gathered from social media. CS-1 has also participated in several controlled purchases of narcotics and methamphetamine from the defendant Matthew STEPHENS, a/k/a "Montana," Kevin BAILEY, a/k/a "Zimmy," and Alphonso GALLIMORE, a/k/a "Mark," a/k/a "Marley," a/k/a "Gallimore,"as well as controlled purchases of firearms from STEPHENS since December 2017. CS-1 has also participated in consensual meets with STEPHENS and BAILEY.

7.      On April 17, 2019, STEPHENS, BAILEY and GALLIMORE were indicted by a grand jury sitting in the Eastern District of Pennsylvania on a litany of charges, including conspiracy to distribute over 500 grams of a substance or mixture containing methamphetamine and other related charges. STEPHENS was also indicted on 8 counts of possessing a firearm by a felon and possession of a machine gun.

8.      Between June 2018 and March 2019, STEPEHNS sold CS-1 a number of firearms and large quantities of methamphetamine from his house on North Howard Street in Philadelphia. All of the sales were video and audio recorded, and each sale was preceded by at least one phone call or text message in which STEPHENS would confirm the time of the exchange and the price of the contraband he would sell to CS-1:

> a.  On June 5, 2018, inside 2332 North Howard Street, CS-1 purchased approximately 279 grams of methamphetamine from STEPHENS in exchange for $7,700.

b. On June 20, 2018, inside 2332 North Howard Street, CS-1 paid STEPHENS for some of the methamphetamine he/she purchased on June 5, 2018 at 2332 North Howard Street, in the amount of $3,300.

c. On July 9, 2018, in front of 2332 North Howard Street, CS-1 purchased a loaded 9MM Taurus pistol from STEPHENS in exchange for $8,500.

d. On July 18, 2018, inside of 2332 North Howard Street, CS-1 purchased approximately 380.5 grams of methamphetamine from STEPHENS in exchange for $7,200.

e. On July 23, 2018, in front of 2332 North Howard Street, CS-1 purchased a loaded .357 Derringer pistol from STEPHENS in exchange for $900.

f. On July 25, 2018, inside of 2332 North Howard Street, CS-1 purchased a loaded .38 revolver from STEPHENS in exchange for $700.

g. On August 3, 2018, inside of 2332 North Howard Street, CS-1 purchased approximately 109.7 grams of methamphetamine from STEPHENS in exchange for $3,600.

h. On August 17, 2018, inside of 2332 North Howard Street, CS-1 purchased approximately 25 grams of heroin from STEPHENS and QUINONES in exchange for $1,750.

i. On August 28, 2018, inside of 2332 North Howard Street, CS-1 purchased approximately 103.37 grams of heroin from STEPHENS and QUINONES in exchange for $6,970.

j.   On January 7, 2019, in front of 2332 North Howard Street, CS-1 purchased a loaded Mac-11 rifle from STEPHENS in exchange for $2,400.

k.   On January 11, 2019, upon leaving 2332 North Howard Street carrying a large object secreted under a jacket, STEPHENS met with CS-1 in Philadelphia and sold him/her a loaded SKS .762 rifle and an AR-15 variant rifle in exchange for $2,100.

l.   On February 28, 2019, inside of 2332 North Howard Street, CS-1 purchased (14) auto sears, (2) AR-15 variant "Ghost" rifles, (1) stolen .45 caliber HI-POINT firearm, and ammunition from STEPHENS in exchange for $9500. NOTE: Auto sears are used to convert firearms from semi-automatic to fully automatic.

m.  On March 14, 2019, just outside of 2332 North Howard Street, CS-1 purchased a 9mm, Sig Sauer pistol and a 9mm, Ruger pistol, both of which contained obliterated serial numbers in exchange for $2500. Additionally, several rounds of ammunition were also provided by STEPHENS to CS-1.

9.      On March 27, 2019, STEPHENS and BAILEY were arrested after giving CS-1 approximately 3.08 kilograms of methamphetamine during a buy/bust operation in the vicinity of a Wawa on Bustleton Avenue in Philadelphia.  A search incident to arrest of STEPHENS resulted in the recovery of:  (1) one rose gold colored iPhone cellular telephone; (2) one black LG cellular telephone, IMEI 356694090082637, and (3) one rose gold colored Apple Watch.  A search warrant, issued by the Honorable Timothy R. Rice, was also executed at STEPHENS'

residence at 2332 North Howard Street on March 27, 2019, where one ZTE cellular telephone, IMEI: 865994033817196, was recovered. Prior to the buy/bust operation on March 27, 2019, STEPHENS communicated with CS-1 in recorded phone calls to arrange the meeting; moreover, in those recorded phone conversations, STEPHENS acknowledged that he was in touch with BAILEY, who would be travelling from Connecticut with the methamphetamine they would sell to CS-1.

10.     Based on my training and experience, I know that cellular telephones are an indispensable tool of the drug trafficking trade. Drug dealers use cellular telephones, including the phone, voicemail, address book, text messaging, e-mail, digital camera, calendars, cellular applications, and similar electronic means, often under fictitious names or names other than their own, in order to communicate with associates, customers, suppliers, and other co-conspirators, to facilitate drug transactions, and to operate their drug trafficking business. I know that drug dealers often list associates, customers, suppliers, and other co-conspirators in address books on their cellular phones, often by nickname or code, to avoid detection by law enforcement and other individuals who would be able to identify them. I know that examining data stored on cellular telephones used by drug dealers can uncover, among other things, evidence that reveals or suggests specific transactions for illegal drugs, the identity of associates, customers, suppliers, and other co-conspirators, storage locations, sources of supply, and the movement of illegal drugs. I know that drug dealers often use multiple cellular phones and often change and/or discard their phones to minimize their chances of being intercepted or otherwise detected by law enforcement.

11.    Based on my training and experience, I know that examining data stored on cellular telephones can also uncover, among other things, evidence that reveals or suggests who possessed or used the device.

12.    Based on the information above, there is probable cause to believe that the devices recovered were used to communicate with CS-1, with BAILEY, and with other members of the conspiracy known and unknown.  Considering that every transaction listed above involved the pre-arranging via telephone call or text message, and the fact that STEPHENS was arrested in possession of three devices capable of transmitting communications (i.e. two cellular phones and an Apple Watch), there is sufficient probable cause for issuance of a warrant with respect to those devices because they contain evidence of drug trafficking and conspiracy to engage in the drug trafficking which was the basis for his arrest on March 27, 2019 and within the scope of the investigation outlines above.  In addition, STEPHENS' phones may contain other information to include text messages, call logs, photographs, or other data directly related to the drug and firearm transactions.

## TECHNICAL TERMS

13.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Cellular telephone:  A cellular telephone (or wireless telephone or mobile telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from

the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Apple Watch is a line of "smart" watches designed, developed, and marketed by Apple Inc. Apple Watch relies on a wireless connection to an iPhone to perform many of its default functions such as calling and texting. However, Wi-Fi chips in all Apple Watch models allow the smartwatch to have limited connectivity features away from the phone anywhere a Wi-Fi network is available.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna

receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic -that is, frequently changed- IP addresses.

e.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

f.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras

also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

g. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

h. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

i.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

14.      Based on my training, experience, and research, I know that the Devices listed in Attachment A have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and/or PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Additionally, a cellular phone and Apple Watch may contain call logs, address books, text messages, emails, videos, photographs, or other stored data relevant to this investigation.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15.      Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

16.      *Forensic evidence*   As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence

of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

      a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

17.　*Nature of examination.*　Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

18.     For the reasons set forth above, I believe there is probable cause to search the

cellular telephones in Attachment A for evidence of violations of 21 U.S.C. § 846, 841(a)(1), 21

U.S.C. § 860(a), 18 U.S.C. § 922(o)(1), 18 U.S.C. § 922(a)(1)(A), and 18 U.S.C. § 922(g)(1).  I

believe there is probable cause to conduct a search of these cellular telephones consistent with

Attachment B which permits a search of all stored data to include, but not limited to contents of

the telephone directory, electronic libraries, stored communications including voice mail, voice

messages and text messages, contact lists, applications, reference material aiding in the furtherance

of criminal activity, photographs, time and date stamps, Global Positioning System (GPS) data,

stored internet searches and any other memory feature relating to the offenses outlined in the

affidavit of probable cause.

Shawn Reznik
Special Agent
Bureau of Alcohol, Tobacco,
Firearms & Explosives (ATF)

Sworn to and subscribed
before me this 23rd
day of April, 2019

HON. MARILYN HEFFLEY
United States Magistrate Judge

## ATTACHMENT A

## ITEMS TO BE SEARCHED

The property to be searched are three cellular telephones and one "smart watch"

("Devices") that are listed below.  The following devices are currently located with the

Philadelphia Police Department in Philadelphia, PA:

      i.    Recovered from STEPHENS' person on the corner of Hellerman Street and Bustleton Avenue in Philadelphia, PA on March 27, 2019, at the time of his arrest: One rose gold colored iPhone cellular telephone.

      ii.    Recovered from STEPHENS' person on the corner of Hellerman Street and Bustleton Avenue in Philadelphia, PA on March 27, 2019, at the time of his arrest: One black LG cellular telephone, IMEI:356694090082637.

      iii.    Recovered from STEPHENS' person on the corner of Hellerman Street and Bustleton Avenue in Philadelphia, PA on March 27, 2019, at the time of his arrest: One rose gold colored Apple Watch.

      iv.    Recovered during a search warrant execution at STEPHENS' house located at 2332 North Howard Street in Philadelphia, PA on March 27, 2019: One ZTE cellular telephone, IMEI: 865994033817196.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the

electronically stored information described in Attachment B.

## **ATTACHMENT B**

All records on the Devices described in Attachment A that relate to drug and firearms trafficking in violation of Title 21, United States Code, §§, 846, 841(a) and Title 18, United States Code, § 922(g), respectively, involving Matthew STEPHENS, including information pertaining to the following matters:

(a) The distribution of illegal drugs;

(b) The types, amounts, and prices of illegal drugs distributed as well as dates, places, and amounts of specific transactions;

(c) The identity of the persons who sent to and/or received communications from the cellular telephone about matters relating to the distribution of illegal drugs, including records that help reveal their whereabouts;

(d) The storage ("stash") locations of illegal drugs;

(e) The sources of supply for the illegal drugs and the list of customers, including names, addresses, phone numbers, and any other identifying information;

(f) The transporting or movement of illegal drugs, including information related to the methods of trafficking and travel schedules;

(g) Evidence indicating how and when the cellular telephone was used to determine the chronological context of cellular telephone use, account access, and events relating to distribution of illegal drugs;

(h) Evidence indicating the geographic location of the cellular telephone at times relevant to the investigation;

(i) Evidence of user attribution showing who used or owned the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such

15

as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

(j) Contents of telephone directories;  electronic libraries; stored communications including voice mail, voice messages and text messages, contact lists, applications, reference material aiding in the furtherance of criminal activity; photographs; time and date stamps; Global Positioning System (GPS) data; stored internet searches;

(k) Any information recording STEPHENS' schedule or travel between 2018 and 2019; and

(l) Any other memory feature relating to the offenses outlined in the affidavit of probable cause.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

16